First case this morning is, I'll ask counsel to pronounce his last name, but Mr. Hillis. Mr. Cheek, client's name, judge, and good morning. May it please the court, my name is David Cheek. We're going to be hearing from you a lot this morning, it looks like, Mr. Hillis. Well, your bad pen keeps showing up, your honor, but with the court's permission, I'll move right on to what we have before you for Mr. Cheek. Mr. Tjader today, I'm going to focus on four issues, he raises six, but by reaching the restitution agreement with the government, we don't need to, which happened after we filed our reply or shortly around that time, I will therefore just discuss the condition to supervise release. And so, if I may begin, the Scientolis condition, we're swimming upstream in light of recent authority, which I want to acknowledge, and I've discussed this with the government, but Philip Jefferson was the case that was decided yesterday, and they rejected the proposition that Scienter needs to be included in the condition, but we have a not so secret weapon to try to counter that, and that's what Congress has armed us with, and that is 3583 D3. So, for all the authority that previous to Poulin and Gibbons and the cases that have been cited, Johnson, etc., we have cases that said Scienter should be included, and then we have the commission saying through a revision of the condition that knowingly should be included as part of the condition as well. So, we've got the authority, yes? This is not one of the conditions that was imposed below that you objected to. Why haven't you waived this particular condition? The subject to plain air through the lack of objection silence does not mean waiver, of course, and so this was just a miss, and the condition has the inclusion, Congress says the statements of the Sentencing Commission should be adhered to, 3583 D3 supports our position, but I don't want to go on and on about this. Mr. Hillis, obviously there are a lot of issues, but I want to follow up on Judge St. E's question about waiver, because this is actually a case, at least as I understand it, in which in the district court, counsel for Mr. Chater raised a lot of issues with respect to the PSR generally, and with respect to a number of supervised release conditions. In virtually any other context, we treat, for example, the choice of issues about jury instructions or about evidence or anything else as a waiver of those that are not raised. Why should this be any different? These sort of issues are always different relative to those, Your Honor, because we have all sorts of cases where somebody would miss criminal history, they would miss an enhancement, there are things that are not noticed. So as much as we've got Gamilla, Block, Gabriel, cases like that, when we look on the other side of the ledger, and we see the likes of Jenkins and Anderson and cases that we've cited, we've noticed the difference between a miss and an effort, something that is voluntary that suggests waivering, not to mention the liberal construction of waiver. But why doesn't the conversation that the defendant's lawyer had with the court with respect to the supervised conditions amount to something more positive? And let me identify exactly what I'm talking about, please. The defendant objected to, I think, four specific conditions. And then toward the end, the court addressed the other conditions and your client waived reading of the conditions as well as the justifications. And the court followed up with, and you have an understanding and you've reviewed the basic conditions with your client. And the response was that he had had the PSR for some time and was able to review them and talk to me. And we've had plenty of time. So he is aware of those conditions and their justification, which is a little bit different than just missing a criminal history category. And he specifically acknowledged them, waived the justifications, waived the reading, didn't have any objections. Why doesn't that waive it? Well, for another reason in addition to the ones I've already covered. So I could talk about Jenkins-Anderson cases where you've gone over criminal history calculations, you miss it, you're entitled to review on appeal. You've gone over restitution, you miss it, you're entitled to consider it on appeal. This is plain air. They get the benefit of that, but they can't claim waiver under these circumstances. I'll also advance to the court, United States v. Adkins talks about due process being a special exception. So we've got written waiver in past it. And so how is it that an oral statement of the type that you're saying is off the cuff in the moment is something that is a greater hurdle to survive than the written waiver of Adkins? The answer to your question to us, that you just asked, is that the record made in the district court here shows able representation, thoughtful consideration of many aspects of the sentencing, and a selection of issues to be raised with the district judge. The approach that you're urging would mean that district judges, Judge Connolly here, engaged completely with all of these issues, very thoughtful consideration, and you're saying, oh gee, maybe now on appeal we'll think of something new. It's not new, it was in writing. It's just like if the judge misses the criminal history, he applies an enhancement that's not supposed to apply. He says he's a career offender when he's not an armed career criminal. These are just misses. But the objection to it is new. There was a representation of an understanding and an intentional relinquishment of objections by waiving reading, not objecting, and acknowledging an understanding of that. I think it doesn't demonstrate those things, Your Honor. That's just a miss. It doesn't show that somebody thoughtfully considered this and said, I'm not going to raise it. Do you want everyone, the judge forces to go through listening to him? Ultimately, my client is under the sentence that's imposed. However the court wants to do it, if it wants to keep a list, if it wants to go down things specifically, raise issues that the parties don't raise, whatever it takes, so long as it's right, my client has to live under the sentence ultimately. We just like it to be correct, and it's not. If I may move on. We've got a similar problem with the second issue about the instructions to follow all conditions to supervise release that's inconsistent with the policy statements of the sentencing condition. And then we have the vague scienter-less condition that requires Mr. Chater to bar him from meeting or accessing a minor. CAPTA says to define crucial terms. That's not done here. We don't know what this means. We've got incidental contact that apparently can lead to a violation without scienter. These are things that have been flagged since Thompson and earlier. Again, we've got due process issues, and if we're not concerned about the first set of issues, we should be concerned about this one, because this is the stuff that leads you to a prison term pretty quickly under 3583E3. If you can have incidental and unknowing contact that leads to somebody going to prison because they took change in a checkout line from a 17-year-old, that should be a problem. That's a due process issue in a greater magnitude than anything I've discussed here. So if we don't want to give relief on something, I hope that we can at least find a way to give relief here, because this is significant. This is potentially incredible deprivation of liberty. Finally, the condition subjecting Mr. Chater to psychosexual evaluations. This is a non-delegation problem under Article III. We've cited Wagner, Schrodinger, Pruden. There's other authority on this. And furthermore, why is it that we are enabling district courts to then enable probation officers to have tests of complete unreliability to be admitted for what purpose and when? Are you claiming that the non-delegation problem is with the first aspect, delegating to the probation office to carry this out, or that the non-delegation problem is with the evaluator determining whether or not certain tests are necessary or both? It was unclear from your point of view. Both. You can't give somebody who's not an Article III judge, and I hope you've made it clear, but I want to say it clearly now. If the judge imposes the sentence, that's within Article III. If you're going to empire somebody else to do it, that's a problem. That's a non-delegation problem, the plow for suspended reforms. Sure, that takes the question very broadly. The question is, as you know, much more nuanced than that in terms of, I mean, just how specific does the judge's sentence have to specify available methods for the treatment? In this particular case, it looks like there was an objection raised to the ABLE and the PLOS demograph. In the district court, the district judge explicitly said, those are okay. Those are within, in essence, the authority I'm giving the probation officer and the therapist. What's wrong with that? Well, they're unreliable tests, for one thing. And secondly, I don't know how you get around the non-delegation when it is, I've considered these and I'm going to allow a probation officer to order it if they think it's necessary. How about if I just say, I'm going to allow a psychiatrist to provide appropriate treatment? Well, I'm glad you mentioned psychiatrists because we've got patient therapy privilege, which is also being abrogated here. So under Jaffe, we think that's wrong. So as far as ordering treatment, that is fine. But judge needs to order it, not tell somebody else, if you think it's necessary, then you order it. Then what's the problem with what the judge did here? Defendant shall participate in an outpatient sex offender counseling program. They ordered it as long as it was recommended by the evaluator, who's the specialist. I think that the problem is that he's allowing then for other components to come in that is at the discretion of somebody else, judge. And again, they're unreliable tests. What are the other components? He's ordered the sex offender counseling as long as it's approved by the evaluator, who's the specialist. What's the other component? The language that then says, and able screening if deemed necessary. Which may involve the continued use of polygraph examinations, which we've already approved. So we've got a problem, though, because it is allowing treatment broadly, which is fine. But then allowing the specific components. I mean, I put it as an example, and I don't mean to be too facetious in the briefs, but suppose the treatment provider says tarot card readings or something else of complete unreliability. Why are we letting probation officers or treatment providers give unnecessary tests to somebody? That shouldn't be done. I think that's in addition to the non-delegation problem. But I think that the grant authority for treatment is fine. But then to say, other components, you pick, you choose, you decide. I think that's a problem. Bring them into court, hear what it is, and then decide if those aspects are additionally needed. Thank you. Thank you, Mr. Charles. Good morning. Tim O'Shea for the United States. The United States, in this case, did not intend to waive waiver. The United States didn't suggest that plein air appears. Where did you argue waiver? No, no, no. I didn't. The United States did not intend to do so. But this court's opinion seemed to suggest that in this context that the plein air standard should apply, and that applies almost throughout the defendant's arguments. So I think that the fundamental difference is the defense counsel below, and I think this happens over and over in these cases, know the probation officers. And they make their sentencing decisions based on what they know about the probation officers, and they know those people are reasonable human beings. With all due respect, Mr. Hillis and his colleagues, you see a lot of Mr. Hillis, and they have a different attitude about the way people behave in the context of supervised release. And those relationships do differ from district to district within the circuit. Right. But Mr. Hillis writes, he suggests, in writing, that the actors, the government actors, in the context of supervised release are not just unreasonable, but petty and vindictive. Mr. Hillis writes that the government is more interested in securing, and this is in Chater's reply brief, the government is more interested in securing technical violations of supervised release than providing adequate notice of a condition or ensuring a defendant's rehabilitation. That's at page four. Page five, Mr. Hillis writes that the government has every intention of using an unintentional violation to revoke people. It's as if the lower standard of proof for a violation of 18 U.S.C. section 3583 isn't a great enough advantage proponent to the evidence, but rather that the government wants to be able to revoke people for inadvertent transgressions. Look, the court sits here and supervises three different states. I will cede three minutes of my time to Mr. Hillis to allow him to identify, if there are my colleagues, if me or my colleagues are those people, I want him to say so. So the court, my office, and other offices can take corrective action. If he means that probation officers, your employees, are interested in securing technical violations, are uninterested in rehabilitation, wish to revoke because of inadvertent transgressions, then he should say so. He should use three of my minutes to identify those people so this court can take corrective action. It's just not reality. The defendant cites no basis, no cases to suggest these things are true, but it's his attitude. I don't mean to diminish the hard work of this court and defense counsel in revising these supervised release violations, and there's more work to do, right? We can see... Mr. O'Shea, there is evidence in some instances of exactly what the defense is talking about. It's not common. I would agree with you. But we certainly see instances of overly aggressive and unreasonable interpretations and applications, and the law has to cope with those situations. So that's why we're here. So why didn't you argue waiver? Because this court's decisions strongly suggest that plain error is but a plot, and the United States is simply following this court's direction. I have been lucky enough to stand before the court many times over many years. I have attempted to argue waiver, and that's been enthusiastically rejected by this court by many times. The court sees waiver with all due respect. With respect to the psychosexual evaluation condition of supervised release, Mr. O'Shea, what advance notice did the defense have with regard to the so-called ABLE testing and the plethysmograph and polygraph? That is... The defendant claims he lacks notice. I respectfully submit that the defendant cannot claim surprise on an issue that he himself raised. So it was raised in his objection. It wasn't specified in the original notice of conditions, proposed conditions. Correct. Okay. Correct. So he brought it up. One can hardly be surprised at the color of the horse one rode in on. But I respectfully submit that the district court correctly... First of all, there are sort of three sub-issues of the psychosexual evaluation. Is there any situation that you're familiar with where the probation office contacts the judge and said, we're proposing to do this, can we? In the context of? These sorts of tests and so forth. I don't know your... So Judge Conley, they did not suggest in this case, as the court knows, Judge Conley, after reading the defense objection, wanted to leave that open for the treatment provider. So he said, if this is appropriate. That's not going to happen until 2025. The treatment provider, ultimately for Mr. Shader, might be finishing up undergraduate now. That person might be in grad school. What that person will use as a test, and the court wanted to leave it open, the district court wanted to leave it open, is unknown. And that's why this issue is not right for the court's review. Because who knows what that person's going to use and deem appropriate. The other thing is, whether those tests... Some people believe those tests are valid. Some people believe they are not. Whether those tests will be vindicated or refuted, or improved upon, or whether it's still uncertain, is unknown. For that reason, the defense can't show that the court abused its discretion. Mr. O'Shea, how does the delegation here to the evaluator to determine if outpatient sex offender counseling program should be recommended, how does that differ from the situation in Wagner, where we found that the district court had erred in delegating to the sex offender treatment provider the question of whether or not the defendant could have access to adult pornography? How do you distinguish it? I respectfully submit that the court's direction in the supervised release condition is not a model of clarity. But at the same time, I respectfully submit that what the court did is the court directed Mr. Chater to participate in psychosexual evaluation, but left open the selection of who that provider is to the probation officer. And that's completely appropriate under science. And that's the first part. I'm referring to the second part of the condition. Right. And if you look at the defendant's appendix, page 93, the little exchange between the district court and the probation officer, the probation officer says, hey, judge, we didn't recommend that. He says, yeah, I know, I just want to make sure that all these tests are an option. I don't know if the provider's going to use one of those, some of them, I don't know. I just want to leave all these open. So under Wagner, in leaving that determination to the treatment provider or treatment evaluator, what's your response to the argument that that's a wrongful delegation of authority? I don't think that's the kind of wrongful delegation this court was talking about. The court doesn't micromanage these. We in the federal system have a lot of arrogance to go around, but we're not arrogant enough that we're going to tell a treatment provider what test to employ to use seven years in the future to figure out whether or not the person's still a danger to the community. So I guess I will give back only two minutes of my time to Mr. Hillis, but he can have five minutes of my argument hunt as well. If I had more heads up that I'd be getting the government's time, I could provide more examples perhaps, but I'm off the cuff here. So let me just respond to what the government said. We don't, as a nation, say everybody be reasonable and therefore we don't need laws. Follow the golden rule and things like this. We have laws to keep people in check so we know what the boundaries are, we know what we need to do, and what the punishments are if you violate them. The government is great if they're not being overactive on these things, if the probation officers aren't. But if it's not worried about these things, then just accept what the restrictions are or what the language is. We don't have to say based on our good word and good graces everything will be done right. Just put the language in that the conditions have, that the statutes require. That's the simpler response to this. People change. Probation officers will be in and be out. We don't know who's going to be there later. Same thing for the U.S. attorneys and for the judges. So have the rules right. Don't rely on who the people are going to be later on who are interpreting things. That's not how this works. And then lastly, if the government doesn't know what the conditions are going to be or what the future brings, that's fine. Nobody does. But then don't ask for these conditions now. Starting with Siegel, this court said best practices would be perhaps to impose the conditions later when we know what the needs are. So why is it there's this great rush to have things that they say are uncertain, they can't answer for the non-delegation issues adequately. Why go through all of this? Instead, why don't we just say let's have the conditions be imposed once the person is released from prison for the future and then we'll know what we need to do for the person who's going to have treatment and things in the Bureau of Prisons. I think this is a foolish exercise to go ahead and pile on conditions like they do instead of waiting and doing it at a more appropriate time. I have nothing further. Thank you, Mr. Lewis. Thanks to both counsel and the case will be taken under advisement.